FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

ETEUATI PAOPAO,
    *Defendant-Appellant.*

No. 05-10653

D.C. No.
CR-04-00326-SOM

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted
September 12, 2006—San Francisco, California

Filed October 10, 2006

Before: Betty B. Fletcher and Marsha S. Berzon,
Circuit Judges, and David G. Trager,* District Judge.

Opinion by Judge Trager

## SUMMARY

### Criminal Law and Procedure/Search and Seizure

The court of appeals affirmed a judgment of the district court. The court held that the fact that a defendant was arrested outside a room did not automatically preclude officers from conducting an appropriate sweep of the interior of

---

*The Honorable David G. Trager, Senior District Court Judge, Eastern District of New York, sitting by designation.

17351

the room to dispel their suspicion of criminal activity and protect themselves.

Appellant Eteuati Paopao was charged in district court in Hawaii with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The gun and ammunition were found after police, responding to an informant's tip that two perpetrators from previous gambling room robberies were in an illegal gambling room, arrested Paopao outside the illegal gambling room and conducted a protective sweep of the room, where the evidence was found behind a sofa. Paopao unsuccessfully moved to dismiss the charge on the ground that it was unconstitutional under the Commerce Clause, as applied to him. Paopao also moved to suppress the firearm and ammunition, arguing that the search that resulted in their discovery violated his Fourth Amendment rights. After an evidentiary hearing, the district court denied the motion to suppress on grounds that the search was justified under the protective sweep and plain view exceptions to the Fourth Amendment. Paopao then pleaded guilty to violating § 922(g)(1), reserving the right to appeal the denial of both the motion to dismiss and the suppression motion.

Paopao appealed.

[1] In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. A lesser expectation of privacy exists in a commercial area than in a residential area. [2] The illegal gambling room was a commercial establishment. There was no evidence to suggest that Paopao worked in the room, that he had any possessory interest in the room, or that he was there for anything other than a commercial or possibly criminal purpose. Therefore, Paopao had no reasonable expectation of privacy in the room. Since Paopao had no reasonable expectation of privacy in the room, he could not challenge the officers' entry or protective sweep. [3] A privacy interest in

the place or thing searched is always required in order for a defendant to challenge the search. Without a privacy interest in the room, Paopao could not challenge the protective sweep.

[4] A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others. [5] The Ninth Circuit has upheld the protective sweep of the interior of a house when the defendant had been arrested just outside the door to the house. [6] The rationale espoused in these cases, that an individual within a house can still pose a threat to arresting officers outside of it, remains true today. [7] In order to be justified in conducting the protective sweep of the room, the officers had to have had a reasonable suspicion of danger. For an officer to harbor a reasonable suspicion of danger there must be articulable facts that, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. In Paopao's case, the officers had received a tip that the two perpetrators from the previous gambling room robberies were in the room. [8] Furthermore, the tip itself was reasonably detailed in nature. [9] The fact that Paopao was arrested outside the room did not automatically preclude the officers from conducting an appropriate sweep of the interior of the room to dispel this suspicion and protect themselves. [10] The search behind the sofa did not exceed the scope of the protective sweep. It was reasonable for the officers to suspect that someone still could be hiding behind the sofa, even after the officers had completed their preliminary sweep of the other parts of the apartment. The district court's decision not to suppress the seizure of the gun and ammunition had to be affirmed.

[11] Paopao's argument that his possession of the gun was not affecting commerce when he was arrested and, therefore, the application of § 922(g) to him was unconstitutional, was previously rejected by the Ninth Circuit. To be constitutional,

the government need only show a minimal nexus that the firearm had been, at some time, in interstate commerce. The judgment of the district court had to be affirmed.

## COUNSEL

Pamela J. Byrne, Assistant Federal Defender, Honolulu, Hawaii, for the defendant-appellant.

Marshall H. Silverberg, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

## OPINION

TRAGER, District Judge:

Eteuati Paopao ("Paopao") pled guilty to a violation of 18 U.S.C. § 922(g), possession of a firearm by a felon. Under a reservation of rights, he now appeals two of the District Court's rulings. Specifically, Paopao alleges that the District Court erred in not suppressing the Honolulu Police Department's seizure of his handgun during a protective sweep of an illegal gambling room. Paopao also claims that the District Court should have granted his motion to dismiss the charges because they were unconstitutional as applied to him. This court has jurisdiction pursuant to 18 U.S.C. § 3231 and 28 U.S.C. § 1291 and affirms.

### Background

In late summer 2004, two perpetrators committed a series of robberies of illegal gambling rooms. The robbers posed as police officers and were armed. Based on descriptions provided by victims and information provided by unidentified sources, Honolulu Police Officer Joseph Lum ("Officer

Lum") believed that the two robbers were Sam Matamua ("Matamua") and Paopao.

On the morning of August 20, 2004, Honolulu Police Detective Brian Lee ("Detective Lee") received a call from a confidential informant who stated that the men responsible for the earlier gambling room robberies were currently at "Charley's Game Room," (the "Game Room") another illegal gambling establishment. When Detective Lee arrived at the intersection near the Game Room, he radioed for assistance. While doing so, he spotted Officer Lum, who was off-duty and happened to be traveling through that area. Officer Lum knew of the Game Room and had been there before; he agreed to assist Detective Lee. When the other officers arrived, Officer Lum told them about the layout of the apartment the Game Room was located in, that it had only one entrance, and that a robbery might be in progress.[1]

As Officer Lum, Detective Lee and the other officers approached the Game Room, approximately seven individuals exited through the front door. The officers instructed those individuals to lie prone on a walkway a few feet from the door. After giving this direction, Officer Lum saw Paopao, whom he recognized from his mug shot, exit the Game Room. Paopao was carrying a tan bag over his shoulder. Upon seeing the police, Paopao turned about and went back into the Game Room. Officer Lum followed Paopao to the Game Room

---

[1]The District Court noted a discrepancy between Detective Lee's testimony and Officer Lum's testimony on this point. Detective Lee testified that the informant had told him that the suspected robbers were in the Game Room, whereas Officer Lum testified that he told the officers arriving on the scene that a robbery was potentially in progress. The District Court, in its findings of fact, stated that this discrepancy was most likely "an honest difference in memory[,]" and found that, despite minor factual discrepancies, on the major events the two policemen were credible witnesses. In the end, however, the issue is immaterial; in either case the officers would still have had a basis to suspect that a potentially armed man was in the apartment.

doorway and peered into the apartment with one eye. He observed Paopao take the bag off of his shoulder, pause for "a brief period," and then place the bag on the floor. Paopao then exited the Game Room and was arrested on an outstanding warrant.

After arresting Paopao, Officer Lum called into the Game Room, announcing his presence and telling anyone inside to come out. Two women exited. Officer Lum testified that he and the other officers then entered the Game Room to conduct a protective sweep. Specifically, based on the tip Detective Lee received, Officer Lum was concerned that the other suspect, Matamua, might still be in the apartment. The Game Room consisted of only three rooms and the protective sweep took less than a minute. As the officers were leaving the apartment, Officer Lum noticed that a gap existed between a sofa and the wall behind it. Concerned that someone could be hiding behind the sofa, Officer Lum went over to look in the gap. Officer Lum did not find anyone hiding in the gap, but as he walked over to the sofa, he noticed that the tan bag Paopao had put on the floor was unzipped. Looking into the bag, Officer Lum saw what he thought to be the handle of a handgun and an ammunition magazine. He seized the bag and its contents, which were later determined to be, in addition to the gun and ammunition magazine, a knife and a black pouch that contained jewels.

On September 2, 2004, the government indicted Paopao on the charge, *inter alia*, that he was a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Paopao moved to dismiss this claim on the grounds that it was unconstitutional under the Commerce Clause, as applied to him. That motion was denied. He also filed a motion to suppress the firearm and ammunition, arguing that the search that resulted in their discovery violated his Fourth Amendment rights. After an evidentiary hearing, the District Court denied the motion to suppress on grounds that the search was justified under the protective sweep and plain

view exceptions to the Fourth Amendment. Paopao then pled guilty to violating § 922(g)(1), reserving the right to appeal the denial of both the motion to dismiss and the suppression motion.

## Discussion

### I.

### Standing

On appeal of the denial of his suppression motion, Paopao claims that the District Court erred in upholding the protective sweep of the Game Room. The government argues that Paopao did not have Fourth Amendment standing to challenge the protective sweep because he lacked an expectation of privacy in the Game Room. The government did not raise this argument below. However, "[t]he fact that the [g]overnment did not specifically raise the expectation of privacy issue during the course of the hearing on the motion[ ] to suppress is of no consequence." *United States v. Nadler,* 698 F.2d 995, 998 (9th Cir. 1983). In this case, Paopao has appealed the denial of his suppression motion; as such, he carries the burden to show that the District Court was in error. The District Court never ruled on whether Paopao had a privacy interest in the Game Room; nonetheless, the government may argue for the first time on appeal that Paopao lacks standing to challenge the protective sweep. *United States v. Taketa,* 923 F.2d 665, 670 (9th Cir. 1991) (holding that, where reliance was not an issue, and the government was not the party with the burden, the issue of standing could be raised for the first time on appeal).

[1] "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter,* 525 U.S. 83, 88 (1998). A person's reasonable expectation of privacy

17358         UNITED STATES v. PAOPAO

may differ based upon the location of the search. *See United States v. Gonzalez*, 328 F.3d 543, 547 (9th Cir. 2003). A lesser expectation of privacy exists in a commercial area than in a residential area. *Id.* (citing *Carter*, 525 U.S. at 90). "Indeed, '[a]n individual whose presence on another's premises is purely commercial in nature . . . has no legitimate expectation of privacy in that location.' " *Id.* (quoting *United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000)).

[2] In response to a question posed by Paopao's attorney during the suppression hearing, Officer Lum stated that nobody lived in the apartment in question; it was just used as an illegal gambling room. From this testimony it is clear that the Game Room was a commercial establishment; Paopao does not challenge this determination. There is no evidence to suggest that Paopao worked in the Game Room, that he had any possessory interest in the Game Room or that he was there for anything other than a commercial or possibly criminal purpose. Therefore, Paopao had no reasonable expectation of privacy in the Game Room. *See Carter*, 525 U.S. at 90-91 (holding that the defendant, who was in a friend's apartment solely for a drug transaction, did not have an expectation of privacy in the apartment); *Gonzalez*, 328 F.3d at 547 (holding that a defendant did not have a reasonable expectation of privacy in a hospital mailroom). Since Paopao had no reasonable expectation of privacy in the Game Room, he cannot challenge the officer's entry or protective sweep. *See United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993) (holding that the defendant did not have a reasonable expectation of privacy in the hallway outside his apartment and, therefore, could not challenge the officer's plain view search into his open doorway).

[3] The only argument offered by Paopao is that standing should not matter in this case. He argues that if Officer Lum did not have a legal right to be in the Game Room, then the plain view exception is inapplicable, regardless of who has privacy rights in the room. This claim is contrary to the long-

established Supreme Court and Circuit precedent that a privacy interest in the place or thing searched is always required in order for a defendant to challenge the search. *See United States v. Pulliam*, 405 F.3d 782, 785-86 (9th Cir. 2005) (stating that an aggrieved person cannot challenge the search of a premises in which the aggrieved person has no privacy interests because the search did not infringe upon his Fourth Amendment rights); *see also California v. Ciraolo*, 476 U.S. 207, 211 (1986) ("The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring))). As a result, without a privacy interest in the Game Room, Paopao cannot challenge the protective sweep.

## II.

## Legality of the Search

Even if Paopao did have standing to challenge the protective sweep, his claims are meritless. Paopao argues that where the arrest is made outside a premises, the protective sweep exception, as defined by the Supreme Court in *Maryland v. Buie*, 494 U.S. 325 (1990), never allows for a warrantless entry into the premises. Additionally, Paopao claims that even if it does, the officers did not have justification to enter in this situation.

[4] The Supreme Court in *Maryland v. Buie* defined a protective sweep to be "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others." *Id.* at 327.

[5] Shortly before *Buie*, the Ninth Circuit decided *United States v. Hoyos*, 892 F.2d 1387 (9th Cir. 1989) *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030, 1032 (9th Cir. 2001) (en banc). After applying a similar standard for protective sweeps as was used in *Buie*, the *Hoyos* Court

upheld the protective sweep of the interior of a house when the defendant had been arrested just outside the door to the house. *Hoyos*, 892 F.2d at 1397. The court reasoned that "[a] bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another." *Id.* Similar holdings with similar rationales have been adopted by several other circuits since the *Buie* decision. *See, e.g., United States v. Lawlor*, 406 F.3d 37, 41 (1st Cir. 2005) ("[A]n arrest that occurs just outside the home can pose an equally serious threat to arresting officer as one that occurs in the home."); *United States v. Cavely*, 318 F.3d 987, 995-96 (10th Cir. 2003) ("Depending on the circumstances, the exigencies of a situation may make it reasonable for officers to enter a home without a warrant in order to conduct a protective sweep."); *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001) (upholding a protective sweep of a house where the arrest was made on the porch outside the house); *United States v. Colbert*, 76 F.3d 773, 776-77 (6th Cir. 1996) (affirming the general principle that a protective sweep of the interior of a house can follow an arrest outside the house, but ultimately holding the sweep in that case to be illegal due to a lack of justification for the sweep); *United States v. Henry*, 48 F.3d 1282, 1284 (D.C. Cir. 1995) (upholding a sweep inside the dwelling where the arrest was made outside); *United States v. Oguns*, 921 F.2d 442, 446-47 (2d Cir. 1990) (allowing the protective sweep where the officers could have reasonably believed that people inside the apartment heard them arresting the defendant outside the apartment).

[6] Paopao has not shown any reason why the precedent established in *Hoyos* is no longer good law. The rationale espoused in *Hoyos*, that an individual within a house can still pose a threat to arresting officers outside of it, remains as true today, post-*Buie*, as it did seventeen years ago. As other circuits have noted, the location of the arrest, inside or outside the premises, should only bear on the question of whether the officers had a justifiable concern for their safety. *See Henry*, 48 F.3d at 1284 ("That the police arrested the defendant out-

side rather than inside his dwelling is relevant [only] to the question of whether they could reasonably fear an attack by someone within it.").

[7] In order to be justified in conducting the protective sweep of the Game Room, the officers must have had a reasonable suspicion of danger. *Buie*, 494 U.S. at 335-36. For an officer to harbor a reasonable suspicion of danger there must be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334. In the present case, the officers had received a tip that the two perpetrators from the previous gambling room robberies were in the Game Room. Even though the officers did not provide any detailed information concerning the identity of the informant, they were not required to do so. It was sufficient that the informant had provided Detective Lee "very accurate" information on approximately twenty previous occasions. *See Adams v. Williams*, 407 U.S. 143 (1972) (holding, in an analogous *Terry* stop situation, where the officer had received his information concerning a man in a car with a gun from an informant he knew to be reliable, the tip alone provided the officer with sufficient reasonable suspicion to reach into the car to retrieve the gun, which was not in plain sight); *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118 (9th Cir. 2003) (stating that it was sufficient to justify a *Terry* stop that the officer know from prior experience that the person who provided the information was reliable); *see also Buie*, 494 U.S. at 334 (stating that the standard applied to protective sweeps is no more and no less than is applied to *Terry* stops).

[8] Furthermore, the tip itself was reasonably detailed in nature; it identified the nationality of the men, identified that they were under suspicion by the police, identified the name and general location of the Game Room and stated that the men were still in the Game Room. *See Fernandez-Castillo*,

324 F.3d at 1117 (stating that one indicia of reliability for a tip can be that it was detailed in nature). The tip, therefore, was sufficient for the officers to believe that the two robbers they suspected were present in the Game Room.

[9] It is clear that when the officers conducted their sweep, they were justified in believing that at least one of the robbers could still have been in the apartment. Two women had exited when the police announced their presence. The tip stated that both robbers were in the Game Room and the officers had yet to encounter Paopao's suspected confederate, Matamua. The fact that Paopao was arrested outside the Game Room did not automatically preclude the officers from conducting an appropriate sweep of the interior of the Game Room to dispel this suspicion and protect themselves. Paopao's argument to the contrary is meritless.

Paopao's other claim concerning the protective sweep is that Officer Lum exceeded the permissible scope of the protective sweep when he looked behind the sofa. Paopao argues that once the police had made their initial cursory inspection of the rooms, the protective sweep was complete and Officer Lum no longer had a legal right to be in the room. The *Buie* opinion emphasized that a protective sweep is "a cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335. The protective sweep purposefully does not have hard time constraints associated with it. "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335-36.

[10] In the present matter, Officer Lum's search behind the sofa did not exceed the scope of the protective sweep. Particularly instructive in this determination is Officer Lum's testimony that he was not secure in the notion that no one was left in the apartment until after he searched behind the sofa. The District Court found this portion of Officer Lum's testimony

credible. The diagram of the Game Room, used by both sides to illustrate the layout of the apartment, showed that the sofa was placed by a wall between the entry room and the room with the gambling machines. This wall would have obstructed the officer's ability to see behind the sofa. As a result, it was reasonable for Officer Lum to suspect that someone still could be hiding behind the sofa, even after the officers had completed their preliminary sweep of the other parts of the apartment. As a result, Paopao's final claim that Officer Lum exceeded the scope of the protective sweep when he looked behind the sofa also fails. Since Paopao has failed to show that the District Court's decision not to suppress the seizure of the gun and ammunition magazine was in error, that decision is affirmed.

### III.

### Motion to Dismiss

[11] Paopao also appeals the District Court's denial of his motion to dismiss. Paopao asserts that his possession of the gun was not affecting commerce when he was arrested and, therefore, the application of 18 U.S.C. § 922(g) to him was unconstitutional. This argument, however, was previously rejected by this court in *United States v. Hanna*, 55 F.3d 1456 (9th Cir. 1995), and again in *United States v. Rousseau*, 257 F.3d 925 (9th Cir. 2001). In *Hanna* this court held that, to be constitutional, the government need only show a " 'minimal nexus that the firearm [had] been, at some time, in interstate commerce.' " *Hanna*, 55 F.3d at 1462 (quoting *Scarborough v. United States*, 431 U.S. 563, 575 (1977)). In both *Hanna* and *Rousseau* the firearm had been manufactured in one state or outside the country, then shipped for sale to another state. On both occasions, this court found that this commercial interstate movement was sufficient to create the required minimum connection.

Paopao argues that this court's holding in *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2002), calls into question the

holdings in *Hanna* and *Rousseau*. The *McCoy* holding, however, is easily distinguishable. The item in question in that case, an allegedly pornographic home photograph of a child, had never traveled in interstate commerce and was never intended for interstate distribution. On the other hand, in this case neither side disputes that Paopao's gun was manufactured in Minnesota and the ammunition was made in Illinois, and both were recovered in Hawaii. In light of this distinction, we conclude that *McCoy* has no effect on the *Hanna* and *Rousseau* holdings and that the District Court's denial of Paopao's motion to dismiss was proper.

## Conclusion

Paopao has failed to show that the denial of his suppression motion and his motion to dismiss were in error. The District Court's rulings and the judgment of conviction are

**AFFIRMED.**